JAN T. AUNE (SBN 236604)
jaune@aunelaw.com
**THE LAW OFFICE OF JAN T. AUNE**
2600 W. Olive Ave., Ste. 500
Burbank, CA 91505
Tel.:   (818) 333-5364
Fax:   (626) 226-5677

Attorney for Plaintiff,
ANDREW TURNQUIST

THE LAW OFFICE OF JAN T. AUNE
BURBANK, CALIFORNIA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANDREW TURNQUIST, an individual<br><br>     *Plaintiff,*<br><br>     v.<br><br>LUMBREE TRIBE ENTERPRISES, LLC, a North Carolina limited liability company; LUMBEE TRIBE HOLDINGS, INC., a North California corporation and  DOES 1 through 10, inclusive;<br><br>     *Defendants*. | Case No. 25-cv-01885-JLS-JLB<br><br>ASSIGNED TO THE HON.<br>JUDGE JANIS L. SAMMARTINO<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br><br>Complaint Filed: July 24, 2025<br><br>Trial Date:      None Set |

## CIVIL ACTION COMPLAINT

Andrew Turnquist (hereafter referred to as "Plaintiff," unless indicated otherwise), by and though his undersigned counsel, hereby avers as follows:

## PRELIMINARY STATEMENT

Defendants Lumbee Trial Enterprises, LLC (LTE) ("LTE"), and Lumbee Tribe Holdings, Inc. ("LTH")  retaliated against Plaintiff Andrew Turnquist ("Plaintiff"), and wrongfully terminated him, because Plaintiff reported to LTE and LTH that U.S. Department of Defense ("DoD") civil service employee

William Santiago harassed, assaulted, and battered Plaintiff in the workplace. (LTE and LTH shall hereafter be collectively referred to as "Defendants")).

## NATURE OF ACTION

1. Plaintiff brings this action for violation of the Defense Contractor Whistleblower Protection Act (DCWPA), the National Defense Authorization Act (NDAA) and other unlawful conduct against his former employers Lumbee Trial Enterprises, LLC (LTE) ("LTE"), and Lumbee Tribe Holdings, Inc. ("LTH").

2. Plaintiff worked for LTE at U.S. Marine Base Camp Pendleton in San Diego County, California.

## JURISDICTION

3. Count I is a civil action by Plaintiff under the Defense Contractor Whistleblower Protection Act. This Court has jurisdiction pursuant to 10 U.S.C. § 4701.

4. Count II is a civil action by Plaintiff under the "whistleblower protection" provision of the National Defense Authorization Act of 2013. This Court has jurisdiction pursuant to 10 U.S.C. § 4712.

5. Events in this matter took place at U.S. Marine Corp Base Camp Pendleton, which is a federal enclave. This Court has federal enclave jurisdiction pursuant to U.S. Const. Art. I § 8, cl. 17.

6. Plaintiff resides in and is a citizen of Adams County, Colorado. Plaintiff is a citizen of Colorado.

7. Defendant LTE is a North Carolina limited liability company with its principal place of business at 60 Union Chapel Road, Pembroke, NC 28372. LTE is a citizen of North Carolina.

8. Defendant LTH is a North Carolina corporation with its principal place of business at 60 Union Chapel Road, Pembroke, NC 28372. LTH is a citizen of North Carolina.

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

9. The United States District Court for the Southern District or California has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship, as Plaintiff is a citizen of Colorada, Defendant LTE is a citizen of North Carolina, Defendant LTH is a citizen of North Carolina. As a result, Plaintiff is of a different citizenship than both Defendants LTE and LTH.

10. Plaintiff is seeking damages in excess $75,000. As a result, for subject matter jurisdiction pursuant to 28 U.S.C. § 1332, the amount in controversy exceeds $75,000.

## VENUE

11. Venue is proper pursuant to 31 U.S.C. § 3732(a) LTE and LTH can be found in, and transact business in the Southern District of California and the violations described herein under 10 U.S.C. § 4712 and 10 U.S.C. § 4712 occurred within this judicial district.

12. Venue is further appropriate in this Venue as Plaintiff was hired through and performed work solely for LTE and LTH.

## PARTIES

13. Plaintiff resides in and is a citizen of Adams County, Colorado.

14. Defendant LTE is a North Carolina limited liability company with its principal place of business at 60 Union Chapel Road, Pembroke, NC 28372. LTE can be served through its Registered Agent, Heather L. Nakai.

15. Defendant LTH is a North Carolina corporation with its principal place of business at 60 Union Chapel Road, Pembroke, NC 28372. LTE can be served through its Registered Agent, Heather L. Nakai.

16. On information and belief LTE is wholly owned by LTH.

17. On information and belief LTH is wholly owned by the Lumbee Tribe of North Carolina. LTH's literature indicates that LTH is headquartered in Pembroke, North Carolina in the heart of the Lumbee Territory, and that

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

LTH "serves as a holding company with multiple subsidiaries that service diverse federal agencies." LTE is listed as a subsidiary of LTH.

18. LTE and LTH are collectively referred to herein as "Defendants".

19. The true names and capacities of Doe Defendants 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues them by their fictitious names. Plaintiff is informed and believes, and on that basis alleges, that Doe Defendants 1 through 10 are legally responsible in some manner for the events and happenings alleged in this complaint, and legally caused injury and damage to Plaintiff as alleged herein. Plaintiff will amend the First Amended Complaint to include the names and capacities of the Doe Defendants as their identities and roles become known.

20. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, or associate, of those defendants fictitiously sued as Does 1 through 10 inclusive and so Plaintiff sues them by these fictitious names. Plaintiff is informed and believes that each of the DOE defendants is in some manner responsible for the conduct alleged herein. Upon discovering the true names and capacities of these fictitiously named Defendants, Plaintiff will amend this First Amended Complaint to show the true names and capacities of these fictitiously named defendants.

## **FACTS**

21. Plaintiff is an engineer.

22. In 2018 Plaintiff obtained his Bachelor of Science in Information Technology from the University of Pheonix.

23. Plaintiff began employment with LTE on or about October 6, 2021.

24. Plaintiff's position with LTE was a Systems Administrator III/System Engineer.

25. Plaintiff worked for LTE at U.S. Marine Base Camp Pendleton in California.

26. Plaintiff is informed and believes that Camp Pendleton is a federal enclave.

27. Plaintiff served in the U.S Marines prior to being employed by Defendants. Plaintiff was stationed at Camp Pendleton when he served in the U.S. Marines.

28. Plaintiff was working on the Camp Pendleton Marine Base for a private sector employer, prior to his beginning employment with LTE.

29. LTE contracted with the U.S. Department of Defense ("DoD") to perform work for the U.S. Government on Camp Pendleton.

30. There a was a DoD contract between LTE and the U.S. Government during Plaintiff's employ with LTE.

31. The DoD awarded the contract to LTE.

32. The Awarding Agency for the contract was the DoD, and the contract Recipient was LTE.

33. The contract between the DoD and LTE for LTE to perform administrative support services for the DoD at Camp Pendleton, which included engineering and technical support.

34. The DoD was obligated to pay LTE approximately $6,700,000 for LTE's services under the contract.

35. The contract has an approximate Start Date of January 17, 2021 and an approximate End Date of September 16, 2025.

36. Plaintiff worked for LTE at Marine Corp Tactical Systems Support Activity ("MCTSSA") on Camp Pendleton.

37. On or about October 22, 2021, Plaintiff had his first day of work with LTE at MCTSSA.

38. Plaintiff's duties included performing engineering work for LTE.

39. During Plaintiff's employ with LTE he was harassed, assaulted, and battered by Civil Service employee Wilfred Santiago ("Santiago").

40. Plaintiff reported the harassment, the assault, and the battery to both LTE and the DoD.

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

41. Within a few weeks of Plaintiff starting work with LTE, Santiago yelled at Plaintiff for not following his inventory procedures from his CCI/CMCC items.

42. Plaintiff noticed that Santiago didn't properly label his classified hard-drives, which were in-use in the server host racks. Plaintiff marked them with sticker labels, to increase the functionality and to minimize the down time of Plaintiff's Command and Control servers and Programs, during Santiago's sporadic inventories.

43. Plaintiff attempted to talk to Santiago about this incident and Santiago's sporadic outbursts, and his previous hostile attitude toward Plaintiff. However, Santiago turned around and walked away from Plaintiff.

44. Plaintiff spoke to Brian Kreslic about Santiago's conduct.

45. Brian Kreslic ("Kreslic") was an LTE employee. Kreslic was a Site Lead for LTE.

46. Kreslic's position with LTE was subordinate to the position that Santigo held as a DoD Civil Service employee.

47. In Kreslic's office, Plaintiff spoke with Kreslic about Santiago's hostile attitude and workplace bullying of Plaintiff.

48. Kreslic told Plaintiff that "I will look into it, and get back to you about this", or words to that effect. However, Kreslic never got back to Plaintiff.

49. In or about November 2021, Plaintiff's second month at LTE, Santiago, in a clear attempt to bully Plaintiff., stated during a team meeting, in front of Plaintiff's co-workers, that ""I don't care what his title or position is here, I don't want him touching nor looking at my networks nor systems/terminals. Not at all" or words to that effect.

50. After the November 2022 meeting Plaintiff approached Kreslic and advised "What's Will's problem with me, the guy barely understands RHEL, and now he wants to make a public statement like that, just because he has some sort of issue against me?" or words to that effect. Kreslic replied "Whatever,

that dude just doesn't like you, that's very obvious now. If his systems fail because of it, then so be it. He should be held accountable, but I doubt that will happen. He walks on water here. We will just face the issue's he creates when they happen" or words to that effect.

51. Then, also in or about November 2022, Santiago assaulted Plaintiff in the workplace. Plaintiff was working in the ACE Lab when Santiago approached Plaintiff and started yelling at him because Santiago claimed he couldn't find items that were on his Controlled Cryptologic Items/Classified Material Controlled Cryptologic ("CCI/CMCC") list.

52. Santiago started to haphazardly remove hard drives from the host computer, which could destroy data that Plaintiff was ordered to create for MLR.

53. When Santiago stopped yelling at Plaintiff and accusing Plaintiff of being incompetent, Santiago turned around and started to walk away.

54. Suddenly, Santiago spun around and started walking toward Plaintiff with clinched fists. Plaintiff stood up from the chair he was sitting in and faced Santiago.

55. Santiago then turned and punched the wall with his fist. Santiago then walked away while saying something under his breath.

56. Plaintiff was scared and extremely concerned that Santiago was going to punch him when he approached him with closed fists. He was even more concerned when Santiago turned and punched the wall/partition.

57. After this incident with Santiago, Plaintiff started keeping notes on what happened in the workplace.

58. Plaintiff reported this incident to Kreslic and Major Eric Kim. Major Kim was an active-duty Marine at the time.

59. After the outburst by Santiago, Troy Thompson pulled Plaintiff to the side and informed him that he could hear the entire incident.

60. Charles Ihrig and Edward Higgens attempted to calm down Plaintiff immediately after the incident with Santiago.

FIRST AMENDED COMPLAINT / DEMAND FOR JURY TRIAL

7

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

61. Charles Ihrig was an LTE employee and Lead. Mr. Ihrig advised Plaintiff that he was interviewed by LTE Human Resources and reported the hostile work environment incidents that he witnessed.

62. Edward Higgens was an LTE employee Lead. Mr. Higgens advised Plaintiff that he was interviewed by LTE Human Resources and reported the hostile work environment incidents that he witnessed.

63. Santiago created a hostile work environment for Plaintiff where Plaintiff was subjected to Santiago yelling at him, and subject Plaintiff to violent uncontrollable outbursts.

64. Shortly after the incident happened Plaintiff discussed it with Jason Whisenhunt ("Whisenhunt"). Whisenhunt was a retired Marine and LTE Site Team Lead. Plaintiff advised Whisenhunt "I don't feel safe working with Santiago anymore!" or words to that effect.

65. In addition to the November 2022 assault, Santiago battered Plaintiff. On one occasion Plaintiff was sitting in chair and Santiago walked up and shoved the chair that Santiago was sitting in.

66. In February 2022, Plaintiff reported to Kreslic and Whitehurst that Santiago had another outburst against Plaintiff.

67. At this February 2022 meeting Plaintiff advised Kreslic and Whitehurst that Plaintiff was going to file a complaint via the contract core with Mr. Hussein Elhady since no one appeared to be taking Plaintiff's complaints seriously, and that Plaintiff did not feel safe with Santiago due to his threats and general body mannerisms against Plaintiff.

68. Hussein El'hady ("El'hady") was a Contracting Core Officer at MCTSAA.

69. Plaintiff texted El'hady and had a phone call with him.

70. Plaintiff then advised El'Hady to proceed with the complaint process.

71. In or about February 2022, Plaintiff then met with Kreslic, Whisenhunt, and Major Kim regarding Santiago.

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

72. At this February 2022 meeting Plaintiff, Kreslic, Whisenhunt, and Major Kim discussed that ongoing harassment and toxic workplace that Santiago had created at work, including in the ACE Lab.

73. During Plaintiff's employ with LTE he discovered that Santiago had previously assaulted another MCTSSA employee, Chris Karandang. In a complaint Plaintiff filed with MCTSSA he referenced that Santiago had previously assaulted another MCTSSA employee.

74. On or about April 1, 2022, Plaintiff emailed an official regarding Santiago to El'hady.

75. Following Plaintiff emailing a complaint to El'hady, Plaintiff was treated as an outcast at work. From approximately April 4, 2022, until June 1, 2022, Plaintiff wasn't given directions on work to perform.

76. In or about May 2022 Plaintiff had a phone call Caleb Malcom, LTE's Chief Executive Officer (CEO), and Director of Human Resources, regarding Plaintiff's complaints about Santiago.

77. In May 2022, Caleb Malcom ("Malcom") was an LTE employee, its CEO, and Director of Human Resources.

78. Malcom advised Plaintiff that the Contracting Core Investigation concluded that they find any merits to Plaintiff's claims against Santiago.

79. Plaintiff had provided the Contracting Core Investigator with facts regarding Santiagos harassment of Plaintiff, including the November 2022 assault.

80. In or about May 2022, Plaintiff had an in-person interview with Major Watkins regarding Plaintiff's complaints about Santiago.

81. Major Watkins was an acting investigative officer for MCTSSA.

82. Prior to the interview Plaintiff asked Kreslic if he needed legal counsel to attend the interview and Kreslic advised that he did not. However, Major Watkins advised at the end of the interview that it was not a standard investigation and that Major Watkins would need to create Summary Statement following the interview.

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

83. In July 2022, Plaintiff was diagnosed with facial paralysis/Bell's Palsy, which was caused from stress, hypertension, associated with work. Plaintiff was excused from work on or about July 18, 2022.

84. On or about July 28, 2022. Plaintiff filed a DoD Office of Inspector General ("OIG") form complaint, as a whistleblower regarding the amount of retaliation he was receiving.  The complaint was filed by email and online.

85. In or about July 2022 and/or August 2022, Plaintiff's DoD OIG form complaint was provided to MCTSSA.

86. Between on or about July 30 to August 2, 2022, Kreslic approached Plaintiff and said "Did you do it?" "You did, didn't you?" "You filed it, didn't you?" or words to that effect.

87. On or about August 4, 2022, Kreslic entered the lab and advised Plaintiff that Plaintiff needed to be in Kreslic's office at 1600 for phone conference with Malcom.

88. On or about August 4, 2022, Plaintiff was retaliated against and terminated by LTE.

89. Plaintiff owned a home in Temecula, California before, during, and after his employ with LTE.

90. Following Plaintiff being wrongfully terminated by LTE, Plaintiff diligently looked for new employment.

91. Plaintiff could not find new employment in San Diego County even though he diligently searched for new employment.

92. In or about October 2022, Plaintiff found new employment as an engineer in Adams County, Colorado.

93. Plaintiff was forced to sell his home in Temecula and move his family to Colorado.

94. Plaintiff is currently employed by his employer in Colorado.

95. Plaintiff has completed the administrative exhaustion requirements for his DCWPA count and his NDAA count.

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

96. On or about February 24, 2023, Plaintiff was interviewed by Darin Dye of the DoD OIG  Mr. Dye's email signature indicates that he is a Senior Investigator, Whistleblower Reprisal Investigations, DoD Office of the Inspector General, located at 4800 Mark Center Drive, Suite 03J25-01, Alexandria, VA 22350-1500.

97. On or about February 25, 2023, Plaintiff's counsel contacted Senior Investigator Dye and advised that Plaintiff requested that the DoD OIG proceed with its investigation of Plaintiff's written reprisal complaint to the DoD Hotline, and Plaintiff's February 24, 2023 sworn, recorded interview, if the DoD OIG decided to conduct its investigation.

98. The DoD OIG decided to investigate Plaintiff's written reprisal complaint made to the DoD OIG and the DOD OIG completed its investigations. As set out below, at the time of this filing Plaintiff has not been provided with a final report of investigation.

99. Ivan Lopez-Perez, Investigator ("Inspector Lopez-Perez") was assigned to the case by DoD Office of Inspector General (OIG).

100. Inspector Lopez-Perez' email signature indicates that he is located at Whistleblower Reprisal Investigations (WRI) DoD OIG, 4800 Mark Center Drive, Suite 14G25, Alexandria, VA 22350-1500.

101. On or about September 13, 2024, Inspector Lopez-Perez emailed Plaintiff's Counsel and advised that "[t]his email updates you on our investigation into the complaint of whistleblower reprisal your client, Mr. Andrew Turnquist, former System Administrator III, at Lumbee Tribe Enterprises, LLC, filed under section 4701, title 10, United States Code, "Contractor Employees:  Protection from Reprisal for Disclosure of Certain Information," as implemented with respect to Department of Defense contracts by Defense Federal Acquisition Regulation Supplement Subpart 203.9, "Whistleblower Protections for Contractor Employees."

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

102.    Inspector Lopez-Perez' September 13, 2024, email further stated that "[o]n September 16, 2024, 180 days will have passed since we initiated this investigation. The statute requires that we obtain your permission to continue beyond 180 days.  At this moment, we have completed the investigation, and the report of investigation is currently under management review.  Please let me know whether you agree to the continuation of this investigation."

103.    On September 15, 2024, Plaintiff's counsel emailed Inspector Lopez-Perez and advised Plaintiff agreed that the DoD OIG WRI could continue its Investigation, which as of September 15, 2024, had gone on for at least 180 days.

104.    At the time of filing this First Amended Complaint, Plaintiff has not been provided with a final report of investigation by the DoD OIG WRI.

105.    On July 24, 2025, Plaintiff's counsel received an email from DoD OIG Investigator Lopez Perez advising that:    "An update on your client's, Mr. Andrew Turnquist, case.  Our office completed a preliminary report of investigations.  We will need Mr. Turnquist's signature in the enclosed nondisclosure agreement to provide you (a non-DoD OIG Party) copy of our preliminary report.  Please review and return the signed document via email on or before Tuesday, July 29, 2025.  Should you need additional time to respond, please let us know."

106.    Prior to receiving the July 24, 2025, email from the DoD OIG, Plaintiff's counsel was already working on finalizing Plaintiff's Complaint, and scheduled to file on July 25, 2025. As a result, Plaintiff's Complaint in this matter was filed on July 25, 2025. Plaintiff and Plaintiff's counsel then communicated with the DoD OIG regarding the preliminary report of investigation, and non-disclosure agreement.

107.    Based upon these facts, Plaintiff has met his administrative exhaustion requirement under the DCWPA and the NDAA.

108.   Plaintiff has suffered severe emotional distress due to his being harassed, retaliated against, and wrongfully terminated.

## COUNT ONE
### (RETALIATION 10 U.S.C. § 4701 (DCWPA))
### (By Plaintiff Against Defendants and Does 1-10)

As a first, separate and alternative claim for relief, Plaintiff alleges:

109.   Plaintiff incorporates by reference all prior paragraphs in this First Amended Complaint as if fully set forth at this point.

110.   In or about 2023, 10 U.S.C. § 2409 was renumbered to 10 U.S.C. § 4701.

111.   10 U.S.C. § 4701 is entitled "Contractor employees: protection from reprisal for disclosure of certain information".

112.   The 2013 National Defense Authorization Act ("NDAA"), signed by President Obama on January 2, 2013, significantly expanded whistleblower protections and extended the protections that applied previously only to government employees. The 2013 NDAA extends whistleblower protections to contractors, subcontractors, and financial assistance recipients and sub-recipients, and implements a new process for the submission and review of complaints. Federal agencies are required to inform their award recipients and contractors of their new rights under the "Pilot Program for Enhancement of Contractor Employee Whistleblower Protections" (Pilot Program), applicable between July 1, 2013, and January 1, 2017. The four-year Pilot Program enhances whistleblower protections for contractor employees and creates additional obligations for Federal agencies. Section 828 of the 2013 NDAA adds a new section 4712 to Title 41 of the U.S. Code, which contains the elements of the Pilot Program and suspends the pre-existing whistleblower protections at 41 U.S.C. § 4705 for the duration of the Pilot Program. An interim rule released September 30, 2013, by the Department of Defense, General Services Administration, and National Aeronautics and Space Administration created a new Federal Acquisition

THE LAW OFFICE OF JAN T. AUNE
BURBANK, CALIFORNIA

Regulation (FAR) section at 48 CFR § 3.908 to implement 42 U.S.C. § 4712 (see Federal Register Vol. 78, No. 189, issued September 30, 2013). FAR sections 3.901 through 3.906 remain intact but are similarly suspended during the Pilot Program.

113.    The scope of coverage is broad and includes all individuals performing work on a government contract or grant, including personal services contractors and employees of a contractor, subcontractor, grantee or subgrantee. Plaintiff was an employee of Defendants and qualifies as an employee covered by the statute under 10 U.S.C. § 4701(a)(1) and 4701(3)(a).

114.    Similar to the text of Section 806 of the Sarbanes-Oxley Act, the NDAA whistleblower-protection provisions bar a broad range of retaliatory acts, including discharging, demoting or "otherwise discriminat[ing] against a whistleblower."

115.    At all times mentioned herein, Plaintiff was a person entitled to the protection of the laws afforded by DCWPA and NDAA.

116.    The facts alleged above constitute violations of the DCWPA and NDAA. Similar to the text of Section 806 of the Sarbanes-Oxley Act, the NDAA whistleblower-protection provisions bar a broad range of retaliatory acts, including discharging, demoting or "otherwise discriminat[ing] against a whistleblower."

117.    10 U.S.C. § 4701(a)(A) mandates that "An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of the following: (A) Gross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

to a Department contract (including the competition for or negotiation of a contract) or grant."

118.   During his employe Plaintiff reported that he had been harassed, assaulted, and battered by Santiago to persons and bodies set out in 10 U.S.C. § 4701(a)(2), including employees of the DoD, and employees of LTE. 10 U.S.C. § 4701(a)(2)(D), (G).

119.   Assault and battery are violations of the California Penal Code.

120.   Assault, California Penal Code § 240, was enacted in 1872. (West's Annotated California Codes).

121.   Battery, California Penal Code § 242, was enacted in 1872. (West's Annotated California Codes).

122.   Assault and battery were enacted in the California Penal Code in1872, approximately fifty (50) years before Camp Pendleton was created in or about 1942.

123.   Plaintiff is informed and believes that Camp Pendleton is a federal enclave.

124.   Sometime after Plaintiff reported that he had been harassed, assaulted, and/or battered by Santiago, he was retaliated against and wrongfully terminated by LTE on or about August 4, 2022.

125.   As required by the NDAA, Plaintiff filed a reprisal claim with the Inspector General of the DoD. 10 U.S.C. § 4701(b)(1).

126.   In or about September 2024, Plaintiff agreed to provide the DoD OIG with a 180-day extension to complete its investigation in accordance with 42 U.S.C. § 4712(b)(2)(A)(B).

127.   The head of the DoD OIG did not issue an order within 210 days after the submission of Plaintiff's complaint as set out under U.S.C. § 4701(c)(3).

128.   Plaintiff has exhausted his administrative remedies under the NDAA, and is therefore entitled to "bring a de novo action at law or equity against the contractor, subcontractor, grantee, subgrantee, or personal

services <u>contractor</u> to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy." 10 U.S.C. § 4701(c)(3).

129.   As a direct, foreseeable, and proximate result of Defendant's acts, Plaintiff has lost employment opportunities.

130.   As a direct, foreseeable, and proximate result of Defendants' acts Plaintiff suffered and continues to suffer substantial losses in earnings and other employee benefits in an amount to be proven at trial.

131.   As a direct, foreseeable, and proximate result of Defendants' acts, Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and severe emotional distress, and discomfort all to Plaintiff's damage in an amount to be proven at trial.

**COUNT TWO**
**(RETALIATION 41 U.S.C. § 4712 (NDAA))**
**(By Plaintiff Against Defendants and Does 1-10)**

As a second, separate and alternative claim for relief, Plaintiff alleges:

132.   Plaintiff incorporates by reference all prior paragraphs in this First Amended Complaint as if fully set forth at this point.

133.   41 U.S.C. § 4712 is entitled the "Enhancement of contractor protection from reprisal for disclosure of certain information."

134.   The 2013 National Defense Authorization Act ("NDAA"), signed by President Obama on January 2, 2013, significantly expanded whistleblower protections and extended the protections that applied previously only to government employees. The 2013 NDAA extends whistleblower protections to contractors, subcontractors, and financial assistance recipients and sub-recipients, and implements a new process for the submission and review of complaints. Federal agencies are required to inform their award recipients and contractors of their new rights under the "Pilot Program for Enhancement of Contractor Employee Whistleblower Protections" (Pilot

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

Program), applicable between July 1, 2013, and January 1, 2017. The four-year Pilot Program enhances whistleblower protections for contractor employees and creates additional obligations for Federal agencies. Section 828 of the 2013 NDAA adds a new section 4712 to Title 41 of the U.S. Code, which contains the elements of the Pilot Program and suspends the pre-existing whistleblower protections at 41 U.S.C. § 4705 for the duration of the Pilot Program. An interim rule released September 30, 2013, by the Department of Defense, General Services Administration, and National Aeronautics and Space Administration created a new Federal Acquisition Regulation (FAR) section at 48 CFR § 3.908 to implement 42 U.S.C. § 4712 (see Federal Register Vol. 78, No. 189, issued September 30, 2013). FAR sections 3.901 through 3.906 remain intact but are similarly suspended during the Pilot Program.

135.   The scope of coverage is broad and includes all individuals performing work on a government contract or grant, including personal services contractors and employees of a contractor, subcontractor, grantee or subgrantee. Plaintiff was an employee of Defendants and qualifies as an employee covered by the statute under 10 U.S.C. § 2409(a)(1) and 2409(3)(a).

136.   Similar to the text of Section 806 of the Sarbanes-Oxley Act, the NDAA whistleblower-protection provisions bar a broad range of retaliatory acts, including discharging, demoting or "otherwise discriminat[ing] against a whistleblower."

137.   At all times mentioned herein, Plaintiff was a person entitled to the protection of the laws afforded by DCWPA and NDAA.

138.   The facts alleged above constitute violations of the DCWPA and NDAA Similar to the text of Section 806 of the Sarbanes-Oxley Act, the NDAA whistleblower-protection provisions bar a broad range of retaliatory acts,

THE LAW OFFICE OF IAN T. AUNE
BURBANK, CALIFORNIA

including discharging, demoting or "otherwise discriminat[ing] against a whistleblower."

139. During his employe Plaintiff reported that he had been harassed, assaulted, and battered by Santiago to persons and bodies set out in 10 U.S.C. § 4701(a)(2), including employees of the DoD, and employees of LTE. 10 U.S.C. § 4701(a)(2)(D), (G).

140. Assault and battery are violations of the California Penal Code.

141. Assault, California Penal Code § 240, was enacted in 1872. (West's Annotated California Codes).

142. Battery, California Penal Code § 242, was enacted in 1872. (West's Annotated California Codes).

143. Assault and battery were enacted in the California Penal Code in1872, approximately fifty (50) years before Camp Pendleton was created in or about 1942.

144. Plaintiff is informed and believes that Camp Pendleton is a federal enclave.

145. Sometime after Plaintiff reported that he had been harassed, assaulted, and/or battered by Santiago, he was retaliated against and wrongfully terminated by LTE on or about August 4, 2022.

146. As required by the NDAA, Plaintiff filed reprisal claim with the Department of Defense Office of Inspector General. 42 U.S.C. § 4712(b)(2).

147. In or about September 2024, Plaintiff agreed to provide the DoD OIG with a 180-day extension to complete its investigation in accordance with 42 U.S.C. § 4712(b)(2)(A)(B).

148. The head of the DoD OIG did not issue an order within 210 days after the submission of Plaintiff's complaint as set out under U.S.C. § 4712(b).

149. Plaintiff has exhausted his administrative remedies under the NDAA, and is therefore entitled to ""bring a de novo action at law or equity against the contractor, subcontractor, grantee, subgrantee, or personal

services <u>contractor</u> to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy." 42 U.S.C. § 4712(c)(2).

150.    As a direct, foreseeable, and proximate result of Defendant's acts, Plaintiff has lost employment opportunities.

151.    As a direct, foreseeable, and proximate result of Defendants' acts Plaintiff suffered and continues to suffer substantial losses in earnings and other employee benefits in an amount to be proven at trial.

152.    As a direct, foreseeable, and proximate result of Defendants' acts Plaintiff has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort all to Plaintiff's damage in an amount to be proven at trial.

///

///

///

THE LAW OFFICE OF JAN T. AUNE
BURBANK, CALIFORNIA

## PRAYER FOR RELIEF

1. On all Counts, for compensatory damages, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, promotions, reinstatement, and other economic damages, as well as damages for mental anguish and emotional distress according to proof;

2. On all Counts, Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate, including but not limited to damages for employer distress/pain and suffering;

3. On all Counts, for attorney fees, prejudgment interest and costs as allowed by law; and for such other and further relief as the Court deems just and proper;

4. Any relief that the court finds just and proper; and

5. Plaintiff is to be given a jury trial.


DATE: August 13, 2025          THE LAW OFFICE OF JAN T. AUNE


                               BY:_____/s/ Jan T. Aune_____
                                   JAN T. AUNE
                                   Attorney for Plaintiff
                                   ANDREW TURNQUIST

THE LAW OFFICE OF JAN T. AUNE
BURBANK, CALIFORNIA

1

## JURY DEMAND

2 Plaintiff requests trial by jury.

3 Dated: August 13, 2025         THE LAW OFFICE OF JAN T. AUNE

4

5                                BY:  */s/ Jan T. Aune*
                                      JAN T. AUNE

6                                     Attorney for Plaintiff
                                      ANDREW TURNQUIST

7

8

9

10

11

THE LAW OFFICE OF JAN T. AUNE
BURBANK, CALIFORNIA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28